United States District Court
Southern District of Texas
**ENTERED**
February 21, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARVIN PIERCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-CV-3339 |
| | § | |
| LEIDOS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION DENYING MOTION FOR
RECONSIDERATION**

Marvin Pierce has moved for reconsideration of this court's December 27, 2021,

Memorandum and Opinion granting summary judgment for Leidos, Inc. (Docket Entry No. 37).

Based on the motion, the response, and the applicable law, the court denies the motion.

"A motion asking the court to reconsider a prior ruling is evaluated" as a motion to alter or

amend a judgment under Rule 59 if it is filed within 28 days of the entry of judgment. *Demahy v.

Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). Pierce filed his motion within the

28-day window, so it is considered a Rule 59(e) motion. "A Rule 59(e) motion calls into question

the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)

(quotation marks omitted). A Rule 59(e) motion "'must clearly establish either a manifest error of

law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments

which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix

Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159

(5th Cir. 1990)). "Reconsideration of a judgment after its entry is an extraordinary remedy that

should be used sparingly." *Templet*, 367 F.3d at 479. "The Rule 59(e) standard favors the denial

of motions to alter or amend a judgment." *Wilbern v. Bayview Loan Servicing, LLC*, 842 F. App'x

865, 869 (5th Cir. 2021) (citing *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)).  A party seeking reconsideration must satisfy "at least one of" the following criteria: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary . . . to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 305 F. Supp. 3d 711, 717 (E.D. La. 2018).

Pierce argues that the court committed manifest error in dismissing his Title VII retaliation claim, because the court misunderstood his argument.[1]  The court understood Pierce to allege that "Leidos retaliated against him after he complained about race discrimination by initiating [performance] reviews and discipline culminating in his extended leave and requirement to reapply for employment."  (Docket Entry No. 37, at 23).  This is because Pierce's complaint stated, under his cause of action for retaliation, that after Pierce complained of discrimination, "[Pierce] was subjected to increased scrutiny and harassment by Mr. Soodavar," "[he] had false allegations made against him by supervisors in order to make him look incapable of leadership and essentially lose his job," and "Mr. Soodavar undermined [Pierce's] authority as team lead by dismissing the orders given by [Pierce] to his subordinates."  (Docket Entry No. 1, at 22).  Pierce now asserts that his retaliation claim is different, and arguably narrower, than the court first considered.  Pierce alleges that Leidos retaliated against him by creating a pretextual reason to fire him—his loss of

---

[1] Pierce does not argue that the court erred in dismissing his race discrimination claim.

government assets—only after he made a race discrimination complaint on August 9, 2019. (Docket Entry No. 39, at 5).

The court already considered and rejected Pierce's claim that the missing assets were falsely used as a pretextual ground to terminate him (if Leidos did, in fact, terminate him).  Pierce alleged that Leidos falsely allocated the missing assets to him, (Docket Entry No. 35, at 25), but he pointed to no evidence other than a statement by Scott Pisut, a program manager, that it was "possible" that "assets that were in Mr. Pierce's name could have been moved into his name by the prior responsible individual" for those assets.  (Docket Entry No. 35-5, at 6 (Q: "[I]t is possible, then, that the assets that were in Mr. Pierce's name could have been moved into his name by the prior responsible individual, correct? A: "If there was one.  I suppose that's a possibility.")).

Pisut testified that "the assets were already in [Pierce's] name" when he searched the database, that Leidos "ran a report based on the responsible individual," "pulled the record," and "ask[ed] other [individuals] in Kuwait to locate those assets that were already in Mr. Pierce's name."  (Docket Entry No. 34-1, at 264).  Leidos presented evidence that it looked into whether it "had 100 percent accountability of all the assets in [Pierce's] name" after learning that "Mr. Pierce wasn't coming back to work" because he was on medical leave.  (Docket Entry No. 34-1, at 262).  Leidos discovered that there were 388 total assets in Pierce's name, and that when Pisut searched for those assets, "they weren't all where th[e] database said they were.  They weren't all where Mr. Pierce said they were."  (*Id.*, at 263).  Pierce was unable to assist Leidos in finding the assets.  Leidos had to pay the U.S. government approximately $19,400 for the missing assets that were in Pierce's name.  (*Id.*, at 257).

Pierce argues that he was forbidden to return to work until he returned the missing assets, which he asserts was a ploy to keep him from returning to work.  Pierce points to no evidence of

this assertion, other than his subjective belief that the missing assets were used as a pretextual reason to deny his return to work.

On this motion for reconsideration, the only additional evidence that Pierce provides are emails from his counsel to Leidos's counsel asserting that Leidos's "reference to missing property is simply a pretext for Leidos' retaliatory refusal to allow Mr. Piece's [sic] return." (Docket Entry No. 39-8, at 11). Subjective beliefs held by Pierce or arguments by his counsel are an insufficient basis to support an inference of, or raise a factual dispute about, pretext. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996) (noting that "unsubstantiated assertions are not competent summary judgment evidence" and that "the non-moving party [must] present evidence—not just conjecture and speculation—that the defendant retaliated . . . against" her); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (summary judgment is proper when the nonmovant does not provide sufficient evidence to support her subjective opinion).

There is no evidence in the record that Leidos used Pierce's misplacement of assets as pretext for terminating him in retaliation for the race discrimination complaint that he made in August 2019. There is no evidence that Pisut and others responsible for locating Pierce's missing assets knew that Pierce had emailed the "Leidos Hotline" in August 2019 complaining of discriminatory treatment, when they searched for, and were unable to locate, the missing assets that were in Pierce's name. (Docket Entry No. 34-1, at 275). There is no evidence that Leidos falsely claimed that it was unable to locate 49 of those assets or that Leidos had to pay the government for them.

There is also no evidence that Leidos retaliated against Pierce by not automatically "rebadging" him for a new position with a different company after Leidos's subcontract with the government ended in April 2021. Pierce cites to deposition testimony by Charles Soodavar, his

supervisor, that other Leidos employees were "rebadged" without any break in employment. (Docket Entry No. 39-4, at 5).   Notably, the exhibit provided by Pierce cuts off the response to a question asking Soodavar whether Leidos employees were "required to do anything in terms of interviewing, anything to be rebadged to the new prime."   (*Id.*).   Pisut answered this question in his deposition.   He testified that all Leidos employees did have to "interview[] for the positions to make sure that the [new prime contractor] was comfortable with their skills and capabilities[,] [a]nd then they were made offers."   (Docket Entry No. 34-1, at 261).   This is consistent with Leidos's statements to Pierce that he needed to apply for a new position with the prime contractor. (Docket Entry No. 39-8, at 12).   Pierce chose not to apply and interview.

Pierce concedes in the motion for reconsideration that there was a nine-month gap between his race discrimination complaint to the "Leidos Hotline" and his termination.   Pierce argues that nine months is close enough "temporary proximity" to establish a causal connection between his complaint and his termination.   (Docket Entry No. 39, at 10).   But "[t]his period of time, alone, is insufficient evidence of causality to establish a prima facie case of retaliation."   *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020) (holding that, "[b]ecause [the plaintiff] fail[ed] to provide more than the nine-month temporal proximity, she faile[d] to establish a prima facie case of retaliation arising out of being switched from [one position] to [another]" after she filed an EEOC charge of discrimination and retaliation); *see also Hypolite v. City of Houston*, 493 F. App'x

597, 607 (5th Cir. 2012) (noting that a nine-month gap "is significantly longer than four months" and "is not enough to establish a causal link for retaliation").

The court has considered Pierce's retaliation claim and finds no supporting evidence in the record.  Pierce has not met his burden of demonstrating that the court made a manifest error of law or fact.  The motion for reconsideration, (Docket Entry No. 39), is denied.

SIGNED on February 21, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge